# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael D. Benson, | Case No. 16-cv-509 (DWF/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Ron Fischer, *Group Supervisor/Officer of the Day*, et al., | |
| Defendants. | |

Michael D. Benson, MSOP, 1111 Highway 73, Moose Lake, MN 55767 (pro se Plaintiff); and

Ralph John Detrick, Assistant Attorney General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128 (for Defendants).

This matter comes before the Court on Defendants' Motion for a Protective Order (ECF No. 68) and Plaintiff's Motion for Leave to Amend Complaint (ECF No. 78).

## I. MOTION FOR PROTECTIVE ORDER

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Rule 26 further provides that the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. Fed. R. Civ. P. 26(c)(1). Among other things, the Court may foreclose entirely the discovery sought or

narrow the scope of such discovery. Fed. R. Civ. P. 26(c)(1)(A), (D). "[Rule] 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. The requirement that good cause be shown, however, still must be met by the party seeking the protective order." *May Coating Techs., Inc. v. Ill. Tool Works*, 157 F.R.D. 55, 57 (D. Minn. 1994) (citation omitted); *see Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) ("[T]he movants bears the burden of demonstrating the necessity of a protective order.").

Defendants move for a protective order, contending that swaths of generically categorized information—data on individuals other than Plaintiff, personnel data, and security data—are protected under the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 *et seq.* Relying on the MGDPA, Defendants seek to limit Plaintiff's access to these types of data and, in some instances, prohibit disclosure entirely. For example, in their proposed Protective Order, Defendants seek to limit Plaintiff's access to "information of which he is the data subject" and to "information on data subjects other than himself to the extent that individual's information is contained within a document that otherwise references Plaintiff and the individual's identity and information would have been known by Plaintiff." (Proposed Protective Order ¶ 4, ECF No. 72.) Defendants also propose that

> security information, . . . which may include MSOP security video, shall not be provided to Plaintiff during discovery, provided to Plaintiff during a deposition (including if it is used as an exhibit or otherwise), or provided to Plaintiff if it is filed with the Court; however, Defendants may allow Plaintiff to view MSOP security video relevant to this case during a deposition or trial, and if any such video is

> discoverable or filed with the Court by Defendants, Defendants shall give Plaintiff reasonable access to view the MSOP security video upon a request by Plaintiff.

(Proposed Protective Order ¶ 8.)

Although given an opportunity to respond to Defendants' motion, Plaintiff did not file a response. Defendants' memorandum and the meet-and-confer statement reflect, however, that Plaintiff objects to the proposed Protective Order to the extent that it limits his access to these categories of information. (*See generally* Defs.' Mem. in Supp. at 2-3, ECF No. 70; ECF No. 71.) In addition, Plaintiff has expressed frustration with Defendants' responses or lack thereof to his discovery requests, including their reliance on the MGDPA.[1] (*See, e.g.*, ECF No. 67 at 2 ("The Defendants responded that the [MGDPA] precludes them from answering the interrogatories."); Mot. for Leave to Amend Compl. at 2 (same), ECF No. 78.)

"It is axiomatic that discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure, not by state rules governing access to information." *Scheffler v. Molin*, No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012); *accord Her v. Paulos*, No. 11-cv-808 (PAM/TNL), 2012 WL 6634777, at *5 (D. Minn. Dec. 20, 2012); *see also Unity Healthcare, Inc. v. Cty. of Hennepin*, No. 14-cv-114 (JNE/JJK), 2015 WL 12977022, at *5 (D. Minn. Sept. 16, 2015) ("As judges in this district have concluded in the context of the [MGDPA], Federal Rule of Civil Procedure 26(b) governs the scope of discovery in federal court."). "[T]he MGDPA cannot be used

---

[1] The Court told Plaintiff then, and is telling him again now, *see infra* Section II.C, that he needs to file a motion to compel to the extent he seeks to place certain discovery disputes before the Court. (Order at 1 n.1, May 16, 2019, ECF No. 77.)

as a basis to thwart or otherwise impede the discovery process in a federal lawsuit." *Sagehorn v. Indep. Sch. Dist. No. 728*, No. 14-cv-1930 (JRT/BRT), 2015 U.S. Dist. LEXIS 192518, at *9 (D. Minn. Feb. 3, 2015). The MGDPA does not "define what information is discoverable in a federal lawsuit." *Scheffler*, 2012 WL 3292894, at *4; *accord R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*, No. 12-cv-588 (MJD/LIB), 2013 WL 12149246, at *6 (D. Minn. Mar. 20, 2013). Nor does its "classification of public and private data create[] some independent evidentiary privilege." *Scheffler*, 2012 WL 3292894, at *4; *accord Her*, 2012 WL 6634777, at *5.

Plaintiff is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Am. Compl. ¶¶ 1, 6, ECF No. 5.) Defendants are state employees involved with the program. (*See, e.g.*, Am. Compl. ¶¶ 2, 7, 8, ECF No. 5.) The Court is mindful that there may be serious concerns regarding the production of certain sensitive information in this litigation and compelling reasons for limiting the scope of discovery. And, the Court may utilize its broad authority to manage discovery and issue protective orders to address these concerns. *See* Fed. R. Civ. P. 26(b), (c); *May Coating Techs.*, 157 F.R.D. at 57.

The problem is that neither party has put the requisite information before this Court so that the Court may weigh considerations of relevancy, proportionality, and any other competing interests. Defendants seek to restrict blanketly access to categories of information. Defendants' request contains little to no context other than that there are unique concerns regarding dissemination of information to a secure treatment facility like MSOP. In this regard, Defendants' contention that Plaintiff has not indicated how these categories of information are relevant to this litigation is uncompelling. The same is true

for Defendants' contention that Plaintiff has not indicated how his access to these categories of information outweighs any harm to the interests in maintaining the confidentiality of such information. It is Defendants' burden to show that a protective order is appropriate under the circumstances. *Shukh*, 295 F.R.D. at 237; *May Coating Techs.*, 157 F.R.D. at 57. Defendants are essentially asking this Court to issue a broad protective order in a vacuum, and to countenance the withholding of discovery as they see fit.

At bottom, it appears the parties have a number of unresolved discovery issues. The Court is not in the habit of inviting future motion practice and strongly encourages the parties to work together to resolve these issues without Court involvement. Nevertheless, should a party believe that Court involvement is necessary, any discovery dispute must be presented to the Court through a proper motion in accordance with the Federal Rules of Civil Procedure and Local Rules of this Court.

To assist the parties in moving towards resolution, the Court will enter a Protective Order consistent with the form protective order available on the District's website. The parties are reminded that information designated as Confidential under the Protective Order may only be used in this action and may not be revealed to anyone else unless expressly permitted by the Protective Order. And, under no circumstances may Plaintiff reveal information designated as Confidential to another individual civilly committed to MSOP. The Court will also issue an Amended Pretrial Scheduling Order so that the parties may have time to work through any discovery issues, providing limited extensions of time to complete discovery served prior to the July 1, 2019 deadline and file

nondispositive motions. (*See* Pretrial Sch. Order at 2, ECF No. 63.) The Court will also adjust other deadlines accordingly.

In sum, Defendant' motion is granted in part, and the Court will enter a Protective Order consistent with the District's form protective order. Defendants' motion is otherwise denied.

## II. MOTION FOR LEAVE TO AMEND

Plaintiff moves for leave to amend the Amended Complaint to add a First Amendment claim purportedly based on a "symbolic protest" theory. Plaintiff also seeks to add additional defendants and factual allegations. Defendants oppose the motion.

### A. Legal Standard

With the exception of amendments as a matter of course, the Federal Rules of Civil Procedure permit a party to "amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rules further provide that leave shall be freely given "when justice so requires." *Id.* There is, however, "no absolute right to amend" and a finding of undue delay, bad faith, dilatory motive, undue prejudice to the non-moving party, or futility may be grounds to deny a motion to amend. *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005). "Fundamentally, 'the grant or denial of an opportunity to amend is within the discretion of the District Court.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963 (8th Cir. 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B. Proposed First Amendment Claim

#### 1. Futility

Among other grounds, Defendants oppose Plaintiff's proposed First Amendment claim on grounds that it is futile. "Futility is a well-recognized basis for denying a proposed amendment." *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 793 (D. Minn. 2019) (citing *Foman*, 371 U.S. at 182); *see, e.g.*, *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 973-74 (8th Cir. 2018) ("[A] district court properly denies leave when a proposed amendment would be futile."); *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) ("However, futility is a valid basis for denying leave to amend." (quotation omitted)).[2] "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quotation omitted); *accord Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) ("[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St.*

---

[2] The Court recognizes that there are circumstances in which it may be more appropriate "to permit the amendment and allow the merits of the claim to be tested by way of a motion to dismiss" rather than on the basis of futility in the context of a motion to amend. *Arcaro v. City of Anoka*, No. 13-cv-2772 (JNE/LIB), 2014 WL 12605451, at *3 (D. Minn. July 15, 2014); *see, e.g., Ivey v. MSOP*, No. 12-cv-30 (DWF/TNL), 2019 WL 2710698, at *3 (D. Minn. June 28, 2019); *Physician Specialty Pharm., LLC v. Prime Therapeutics*, LLC, No. 18-cv-1044 (MJD/TNL), 2019 WL 1748718, at *2 & n.2 (D. Minn. Apr. 19, 2019); *Arcaro*, 2014 WL 12605451, at *2-3; *see also Henrickson v. Fifth Third Bank*, No. 18-cv-86 (WMW/TNL), 2018 WL 6191948, at *3-4 (D. Minn. Nov. 28, 2018). This is not one of those cases.

*Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

"In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, [courts] hold a *pro se* complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). But, "[a]lthough pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'" *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Stated differently, "this standard does not excuse pro se complaints from 'alleg[ing] sufficient facts to support the

claims advanced.'" *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010) (per curiam) (alteration in original) (quoting *Stone*, 364 F.3d at 914). As the Eighth Circuit Court of Appeals has explained,

> [w]hen we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.

*Stone*, 364 F.3d at 915.

### 2. Prior First Amendment Claim

In brief, Plaintiff's proposed First Amendment claim is based on an MSOP policy that requires him to wear an identification badge bearing his photograph, full name, a bar code, and the words "Minnesota Sex Offender Program." (Proposed Second Am. Compl. ¶¶ 10, 11, ECF No. 78-2.)

Earlier in this litigation, Plaintiff previously asserted that the badge policy violated his First Amendment rights by "requir[ing] him to wear a 'humiliating' placard bearing the words 'Minnesota Sex Offender Program.'" *Benson v. Piper*, No. 16-cv-509 (DWF/TNL), 2016 U.S. Dist. LEXIS 190502, at *10 (D. Minn. Dec. 8, 2016), *adopting report and recommendation as modified*, 2017 U.S. Dist. LEXIS 158017 (D. Minn. Mar. 31, 2017) [hereinafter *Benson II*]. The district court evaluated Plaintiff's First Amendment claim under "a compelled speech theory" because "Plaintiff d[id] not primarily frame his actions in refusing to wear the identification badge as a form of symbolic protest intended to send a particular message. Rather, it is the purported

message imposed by the state—'Minnesota Sex Offender Program'—with which Plaintiff [wa]s chiefly concerned." *Benson II*, 2017 U.S. Dist. LEXIS 158017, at *7 n.2.

The district court concluded that Plaintiff failed to state a First Amendment claim based on the badge policy, reasoning:

> The First Amendment prohibits compelled speech in which the government requires an individual "personally to express a message he disagrees with." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005); *see also Gralike v. Cook*, 191 F.3d 911, 917 (8th Cir. 1999) ("[T]he First Amendment . . . bars . . . state action which compels individuals to speak or express a certain point of view."). The concept of "speech" under the First Amendment covers "not only . . . verbal expression, but also . . . symbolic or expressive conduct that is 'sufficiently imbued with elements of communication.'" *Robb v. Hungerbeeler*, 370 F.3d 735, 744 (8th Cir. 2004) (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)). First Amendment protection thus extends to "conduct that is inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 126 S. Ct. 1297, 1310 (2006). Nonverbal conduct is properly characterized as speech where "it is intended to convey a particularized message and the likelihood is great that the message will be understood by those who view it." *Burnham v. Ianni*, 119 F.3d 668, 674 (8th Cir. 1997). "If that which is being coerced is not speech, then speech is not being coerced and the inquiry ends." *A.H. ex rel. Hernandez v. Northside Indep. Sch. Dist.*, 916 F. Supp. 2d 757, 773 (W.D. Tex. 2013).
>
> . . .
>
> Even assuming all of the allegations in the Complaint are true and construing all reasonable inferences in the light most favorable to Plaintiff, *see Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986), the Court concludes Plaintiff has not plausibly alleged a violation of his First Amendment rights. Although the identification badge requirement compels Plaintiff to wear and display particular words, the Court concludes that there is no "speech" being forced upon Plaintiff. The purportedly offensive phrase—"Minnesota Sex

> Offender Program"—does not "express a message," *Johanns*, 544 U.S. at 557, or require Plaintiff to "express a certain point of view," *Gralike*, 191 F.3d at 917. Rather, the words simply identify the state facility to which Plaintiff is civilly committed. The fact that the term "sex offender" is included in the name of the facility does not transform the entire phrase into a stigmatizing label. In context, the placement of the words "Minnesota Sex Offender Program" on the identification badges cannot be plausibly understood to convey a message implicating concerns over compelled speech. The Court agrees with Defendants that requiring committed individuals to wear an identification badge including the words "Minnesota Sex Offender Program" does not implicate the First Amendment.

*Benson II*, 2017 U.S. Dist. LEXIS 158017, at *4-7 (alteration in original).

In a footnote, the district court additionally stated that "even if an expressive conduct (symbolic protest) claim were presented based on Plaintiff's refusal to wear the identification badge, the Court would nonetheless conclude that this claim is inadequately pled because the Complaint does not plausibly allege that any message expressed by such conduct would be likely understood by those who view it." *Id.* at *7 n.2 (citing *Burnham*, 119 F.3d at 674).

### 3. Proposed Allegations

Plaintiff's proposed First Amendment claim is based on these same core allegations, namely, MSOP has a policy requiring him to wear an identification badge bearing his photograph, full name, and the words "Minnesota Sex Offender Program." Plaintiff alleges that the badge policy "forces communication with all those who are not therapy and staff members." (Proposed Second Am. Compl. ¶ 10(a).) There are, however, two additional twists.

In his proposed First Amendment Claim, Plaintiff links the identification badge's "force[d] communication" to Minn. Stat. § 245G.15, which discusses the protection of the rights of clients at chemical dependency licensed treatment facilities.[3] (Proposed Second Am. Compl. ¶¶ 10(b), 11, 12; *see also* Proposed Second Am. Compl. ¶ 32.) Specifically, Plaintiff relies on subdivision 3, which governs the use of client photographs. *See generally* Minn. Stat. § 245G.15, subd. 3. (Proposed Second Am. Compl. ¶¶ 10(b), 11, 12; *see also* Proposed Second Am. Compl. ¶ 32.) Plaintiff alleges that the badge policy violates Minn. Stat. § 245G.15, subd. 3, and consequently his First Amendment rights, because "[t]he statute states that the ID badge may be required for the communication purpose of enhanced supervision but 'only' for the therapy or staff members." (Proposed Second Am. Compl. ¶ 10(b); *accord* Proposed Second Am. Compl. ¶ 11.) Plaintiff alleges that "[r]equiring him to wear the ID badge at all times unnecessarily allows for ID badge communication with others that are not therapy or staff members, which is not allowed per statute." (Proposed Second Am. Compl. ¶ 11.)

Next, while Plaintiff purports to be bringing his proposed First Amendment Claim under a symbolic-protest theory, (*see, e.g.*, Pl.'s Mot. for Leave to Amend Compl. at 2 ("Plaintiff requests the courts [sic] permission to Amend Complaint and allow for a [sic] alternative 'symbolic protest' First Amendment claim."), Plaintiff includes allegations related to both symbolic-protest and compelled-speech theories. In his motion, Plaintiff explains that he has "put[] forth the alternative theory that he has the right to

---

[3] Plaintiff also generically references Chapter 246, which governs state-operated services. *See generally* Minn. Stat. §§ 246.01-.722. (Proposed Second Am. Compl. ¶¶ 10(b), 11, 12.)

12

'symbolically protest' wearing the ID badge at all unnecessary times that don't require enhanced supervision," but "may yet have a surviving 'compelled speech' claim because 'communication purposes' may be captured under its umbrella even if there's no message." (Pl.'s Mot. for Leave to Amend Compl. at 4.)

Leaving his options open, Plaintiff alleges that "[i]n forcing [him] to wear the ID badge at all times the Defendants are arbitrarily forcing [him] to communicate to others (compelled speech) who are not therapy or staff members." (Proposed Second Am. Compl. ¶ 10(c); *see also* Proposed Second Am. Compl. ¶ 11 (alleging civil rights violation based on "compulsorily requiring him to wear the ID badge for purposes other than communication necessary for enhance [sic] supervision").) Plaintiff then alleges that "[t]he Defendants do not recognize [he] has the right to 'symbolically protest' wearing the ID badge for purposes other than enhanced supervision." (Proposed Second Am. Compl. ¶ 10(d).)

### 4. Reliance on State Law

Plaintiff's proposed First Amendment claim is brought pursuant to 42 U.S.C. § 1983. (*See* Proposed Second Am. Compl. ¶¶ 3, 31-35.) "Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (quotations and citations omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see* 42 U.S.C. § 1983.

"[V]iolations of state laws do not by themselves state a claim under 42 U.S.C. § 1983. Section 1983 guards and vindicates federal rights alone." *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 965 (8th Cir. 2015) (quotation omitted); *see, e.g.*, *Scheeler v. City of St. Cloud*, 402 F.3d 826, 832 (8th Cir. 2005) ("[A]lleged violations of state laws, state-agency regulations, and even state court orders do not by themselves state a claim under 42 U.S.C. § 1983." (quotation omitted)); *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("We take this opportunity to emphasize that violations of state laws, state-agency regulations, and, more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983."); *see also Preston v. City of Pleasant Hill*, 642 F.3d 646, 650 (8th Cir. 2011) (A plaintiff may not bring a state claim under the aegis of § 1983 . . . ."). "When a plaintiff fails to state a violation of a right secured by the Constitution and laws of the United States, a § 1983 claim cannot succeed." *Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 935 (8th Cir. 2016).

In relevant part, Minnesota law provides that "[a] photograph for identification . . . to enhance either therapy or staff member supervision may be required of a client, but may only be available for use as communications within a program." Minn. Stat. § 245G.15, subd. 3(a). Defendants argue that Minn. Stat. § 245G.15, subd. 3, is not applicable to Plaintiff because "Chapter 245G only applies to chemical dependency licensed treatment facilities," not MSOP, where Plaintiff is currently confined. (Defs.' Opp'n at 8-9, ECF No. 80.) Defendants also argue that, "even if Chapter 245G was applicable, requiring Plaintiff to wear an ID badge while within the MSOP facility clearly does not violate this statute as it enhances a staff member's ability to identify clients and

14

therefore enhances the staff member's ability to supervise clients." (Defs.' Opp'n at 9 n.3.)

Here, even if the Court were to assume for the sake of argument *both* that Minn. Stat. § 245G.15, subd. 3, applied to Plaintiff *and* that the badge policy violated Minn. Stat. § 245G.15, subd. 3, Plaintiff cannot state a claim under § 1983 based on an alleged violation of state law. Therefore, the Court proceeds to analyze Plaintiff's proposed claim under the First Amendment.

### 5. First Amendment

Plaintiff's proposed First Amendment claim fails for the same reasons the district court determined that his prior First Amendment claim failed. Indeed, the fundamental factual allegations underlying both his prior and proposed First Amendment claims remain the same: "Plaintiff alleges a First Amendment claim based on an institutional policy that requires committed individuals to wear an identification badge—a 'sign/ID'— bearing the individual's name and photograph and stamped with the words 'Minnesota Sex Offender Program.'" *Benson II*, 2017 U.S. Dist. LEXIS 158017, at *5. The only difference is that the proposed First Amendment claim includes allegations that the use of Plaintiff's picture on the badge violates state law. But, as noted above, Plaintiff's reference to an alleged violation of state law cannot state a claim under § 1983. Therefore, for the reasons previously articulated by the district court, the Court concludes that Plaintiff's proposed First Amendment claim fails to state a claim for relief under either a compelled-speech or symbolic-protest theory and is consequently futile. *See id.* at *4-7 & n.2.

### C. Additional Allegations & Defendants

Plaintiff also seeks leave to include additional factual allegations and defendants regarding the events at issue in this litigation. For the reasons that follow, the Court likewise concludes that the remainder of Plaintiff's proposed amendments are inappropriate.

First, the proposed Second Amended Complaint is, for all practical purposes, a complete rewriting of the operative Amended Complaint. Consistent with the Court's Local Rules, Plaintiff provided a strike-through version of the proposed Second Amended Complaint showing how the proposed pleading differs from the operative pleading. *See* D. Minn. LR 15.1(b). As this demonstrative shows, Plaintiff has removed and rewritten nearly all of the factual allegations. (*See generally* ECF No. 78-1.) Plaintiff's proposed amendments have essentially created a moving target for Defendants.

With the exception of the limited extension granted above, *see supra* Section I, discovery in this matter has closed.[4] Permitting Plaintiff to recast the relevant facts to his constitutional claims at this stage of the proceedings, resulting in additional discovery and increased delay, is unduly prejudicial to Defendants and inconsistent with the principles of Rule 1. *See* Fed. R. Civ. P. 1 (stating the Rules of Civil Procedure "should

---

[4] The Court is mindful that Plaintiff's motion to amend is timely. The Pretrial Scheduling Order provides that motions to amend the pleadings were due by May 15, 2019. (Pretrial Sch. Order at 2.) Consistent with the Pretrial Scheduling Order, Plaintiff filed a motion to amend on May 8, 2019. (*See generally* ECF No. 67.) This motion to amend was denied without prejudice for failure to comply with the Local Rules, and Plaintiff was given until June 17, 2019 to refile his motion. (ECF No. 77 at 1-3.) Defendants argue that "[i]t has already been over three years since this case was filed" and "more than two years since the Court initially informed Plaintiff that his First Amendment claim was dismissed." (Defs.' Opp'n at 6.) Defendants' timing arguments in this regard are not convincing. Approximately the first nine months of this litigation were spent addressing two motions to dismiss filed by Defendants. (*See generally* ECF Nos. 11, 25, 27, 39.) This matter was then subsequently stayed for more than a year pending related litigation in *Karsjens v. Piper*, No. 11-cv-3659 (DWF/TNL). (ECF Nos. 53, 54.) The stay was lifted in October 2018. (ECF No. 54.)

16

be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) ("The district court did not abuse its discretion in denying the motion to amend given the potential prejudice to defendants that would result from the late addition of a new claim proposed after most of the discovery had been completed.").

Moreover, although Plaintiff's proposed amendments address generally the same subject matter as the Amended Complaint (namely, his placement in the High Security Area ("HSA"), the use of handcuffs and strip searches, and the denial of food), the wholesale reframing of the factual allegations underlying these alleged constitutional violations arguably reshapes the claims themselves. Indeed, permitting the proposed Second Amended Complaint would, in all likelihood, prompt further analysis of whether Plaintiff's prior "Fourth Amendment search and seizure, Fourteenth Amendment procedural due process, and Fourteenth Amendment substantive due process" claims remain viable. *Benson II*, 2017 U.S. Dist. LEXIS 158017, at *12 (listing remaining claims). Further complicating matters, allegations related to the futile proposed First Amendment claim often permeate Plaintiff's other proposed amendments, appearing alongside and intermingled with Plaintiff's other constitutional claims. (*See, e.g.*, Proposed Second Am. Compl. ¶¶ 19, 20, 21, 29.)

Second, instead of focusing on the events giving rise to the alleged constitutional violations and the individuals purportedly involved in those violations, several of Plaintiff's proposed amendments are directed at the discovery process. For example,

17

Plaintiff asserts that certain individuals have not appropriately responded to discovery. (*See, e.g.*, Proposed Second Am. Compl. ¶¶ 13, 14, 17.) Plaintiff also asserts that Defendants have raised improper objections and are withholding documents and other information. (*See, e.g.*, Proposed Second Am. Compl. ¶¶ 13, 14, 17; *see also, e.g.*, Proposed Second Am. Compl. ¶ 19.) This is not the proper way to address discovery disputes. As the Court stated in the May 16, 2019 Order:

> To the extent Plaintiff is attempting to place certain discovery disputes before the Court, he is required to comply with Local Rule 37.1, which provides:
>
>> A motion under Federal Rule of Civil Procedure 36(a)(6) or 37 must contain, either in the motion itself or in the accompanying memorandum—
>> (a) any certification required by a federal or local rule that the movant has in good faith conferred or attempted to confer with the party failing to act;
>> (b) a specification of the disclosure or discovery in dispute;
>> (c) the text (which may appear in an exhibit to which the motion or memorandum refers) of any interrogatory, request, question, or notice in dispute, together with each answer, response, or objection to any such interrogatory, request, question, or notice;
>> (d) a concise statement of why the disclosure, answer, response, production, or objection is insufficient, evasive, incomplete, or otherwise improper;
>> (e) if the motion concerns a failure to preserve electronically stored information, a showing that the information—
>> (1) should have been preserved in the anticipation or conduct of litigation,
>> (2) was lost because a party failed to take reasonable steps to preserve it, and
>> (3) cannot be restored or replaced through additional discovery; and
>> (f) the remedy sought, together with an argument for why the requested remedy is authorized and justified.

(ECF No. 77 at 1 n.1.) In a similar vein, at various points, Plaintiff also appears to be making substantive arguments and drawing legal conclusions based on discovery he received. (*See, e.g.*, Proposed Second Am. Compl. ¶¶ 20, 21, 25, 26, 27, 29.) Such arguments are more appropriately raised in support of or response to a motion for summary judgment or at trial.

Third, some of the factual allegations Plaintiff seeks to add are already being litigated in another matter, *Benson v. Piper*, No. 17-cv-266 (DWF/TNL). *See, e.g.*, 2019 WL 2017319, at *7 (D. Minn. Jan, 25, 2019), *adopting report and recommendation*, 2019 WL 1307883 (D. Minn. Mar. 22, 2019).

Therefore, for the reasons stated above, Plaintiff's motion to amend is denied.

### III. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for a Protective Order (ECF No. 68) is **GRANTED IN PART** and **DENIED IN PART**.

2. A Protective Order shall issue shortly.

3. An Amended Pretrial Scheduling Order shall issue shortly.

4. Plaintiff's Motion for Leave to Amend Complaint (ECF No. 78) is **DENIED**.

5. All prior consistent orders remain in full force and effect.

6. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or

limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: August   6   , 2019                              *s/ Tony N. Leung*
                                                                    Tony N. Leung
                                                                    United States Magistrate Judge
                                                                    District of Minnesota


*Benson v. Fischer et al.*
Case No. 16-cv-509 (DWF/TNL)